UNITED STATES, Appellant

v.

JOSEPH H. JOHNSON, Private, U. S. Army, Appellee

4 USCMA 149, 15 CMR 149

No. 3127

Decided April 9, 1954

Lt Col William R. Ward, U. S. Army, and Maj Irvin M. Kent, U. S. Army, for Appellant.

Maj Edwin Doran, U. S. Army, and 1st Lt Justin L. Vigdor, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

A general court-martial sitting at Camp Stewart, Georgia, tried the accused, Johnson, under charges specifying disrespectful behavior toward a superior officer, willful disobedience of the lawful order of the same officer, and drunkenness and disorder in a public place—in violation of the Uniform Code of Military Justice, Articles 89, 90, and 134, 50 USC §§ 683, 684, and 728, respectively. He was found guilty of having been drunk and disorderly and of showing disrespect toward First Lieutenant Alan D. Carnes "by saying to him 'Carnes, you're getting out of the Army soon, and I'm going to beat the . . . out of you' and 'Lt. Carnes is a stupid . . . and a . . . and I'll get you later,' or words to that effect." He was acquitted under the charge of willful disobedience, but found guilty of the included offense of failure to obey, as proscribed by Article 92 of the Code, supra, 50 USC § 686. Following presentation of evidence revealing four previous convictions, the accused was sentenced to receive a bad-conduct discharge, to total forfeitures, and to confinement at hard labor for one year.

The findings and sentence were approved by the convening authority—but a board of review in the office of The Judge Advocate General, United States Army, determined that guilt of drunk and disorderly conduct alone could lawfully be affirmed. It predicated this result on a conclusion that the law officer had prejudiced the substantial rights of the accused by failing to instruct that certain evidence of intoxication should be considered as bearing on the accused's capacity to know that he was addressing and failing to obey a superior officer. The Acting The Judge Advocate General has certified two questions to us—the first inquiring whether the instructions supplied by the law officer on the subject of knowledge were sufficient; the second asking whether, if the instructions were inadequate, defense counsel had waived the rights of the accused in the premises. Since we have concluded that the instructions furnished the court were sufficient, the second question will not be considered herein.

II

Lieutenant Carnes testified that shortly after midnight on January 31, 1953, and during the course of a tour as Military Police Duty Officer, he had entered an off-post restaurant for a cup of coffee. While seated, and in con-

versation with civilian and military law enforcement officers, Carnes was approached by the accused, who was under the influence of alcohol, but not in such degree that the former deemed action required. The accused attempted to seat himself, at which the lieutenant requested that he leave. The accused refused, and expressed to Carnes certain of the derogatory sentiments specified under the charge of disrespect. Despite an order to be at ease, the accused went forward with his tirade. Accordingly, he was taken by the lieutenant to Military Police Headquarters, where he continued his fulminations and uttered the remaining disrespectful words alleged. Lieutenant Carnes was in full uniform at the time of the incident, and it was brought out at the trial that the accused had enjoyed previous opportunities to know of his identity and his military grade. Carnes stated that the words alleged in the specification were the exact ones used by the accused. One Harris also testified for the prosecution—and asserted that at Military Police Headquarters the accused had insulted the lieutenant as alleged. However, it did not clearly appear from Harris' rather general testimony whether the accused had addressed Carnes by his military title.

The accused was the only witness for the defense, and related that he had been drinking whiskey, beer, and champagne since noon of January 30. He recalled having consumed an "extraordinary amount" of liquor, and that he had entered the restaurant in question. Also he recalled "being at a table; there was group of people there at the table; I don't know what made me go over there or anything, I mean, I just don't remember. I knew I went over to a table." The accused could not remember the persons at the table, although it "seems like two civilians were sitting there and I remember the next day that they said Lieutenant Carnes was there and I just don't remember. My mind just became a blank." When the claimed amnesia terminated, the accused found himself on post, although "I don't know exactly how I got back." This familiar account of temporary "blackout" was not supplemented by any

sort of showing of mental disorder, save the accused's testimony after findings to the effect that he was a chronic alcoholic.

## III

This case would be on all fours with United States v. Higgins, 4 USCMA 143, 15 CMR 143, if the accused had been found guilty of willful disobedience— and not of a mere failure to obey. As to the charge of disrespectful behavior —as in Higgins—the court was instructed that "it must be satisfied by legal and competent evidence beyond a, reasonable doubt: . . . that the accused knew that the said First Lieutenant Alan D. Carnes was his superior officer." Its members were also told by the law officer concerning the willful disobedience charge that they must be satisfied similarly "that the accused knew that the command was from his superior officer." Thereafter the following instruction was supplied:

"In regard to Charge II, with reference to the evidence tending to show that the accused was intoxicated at the time of the alleged offense of willful disobedience of a command of his superior officer, you are advised that you may consider evidence of voluntary drunkeness [sic] in determining whether the accused had sufficient mental capacity to entertain. the specific intent involved in the offense of willful disobedience. The specific intent involved in the offense of willful disobedience is a specific intent to defy authority. The fact that a person was intoxicated at the time he committed an offense does not necessarily show that he was deprived of his reasoning ability for a person may be drunk and at the same time be aware of his acts and their probable consequences. The question raised by the evidence of voluntary drunkeness [sic] and presented for your determination is whether the accused was intoxicated to such a degree as to render him mentally incapable of entertaining an attempt to defy authority. There is other evidence in the case which you may properly weigh with or against the evidence of voluntary drunkeness [sic] in determining the accused's

**151**

reasoning ability, such as the evidence that the accused called the lieutenant by his first name and, further, the evidence that the accused did not know when he entered Dells' Place and who he was talking to.

"In the light of all the evidence if you have a reasonable doubt that the accused was mentally capable of entertaining the specific intent to defy authority, you must find the accused not guilty of that offense."

As in Higgins, here too, if necessary, we would have been able to recognize that the court-martial could not have concluded—within the framework of the evidence adduced at the trial—that the accused's behavior constituted an example of "willful" defiance of authority without at the same time determining that he knew Carnes to be a lieutenant and thus a superior officer. Of course, the court-martial did not find willfulness here—and the reasoning is inapplicable. However, other portions of that opinion apply distinctly. The court-martial specifically found that the accused had uttered words which included the *name* of Lieutenant Carnes, although the finding was in a remote sense qualified by the inclusion within the specification of the phrase, "or words to that effect." It is impossible to reconcile a conviction of disrespect under the evidence presented—and particularly under the specification as drawn—with any conclusion other than that the court found that the accused had spoken the words complained of. The court-martial was instructed that to convict of disrespect they must find that the accused used "certain language as alleged." They so found—and it is inconceivable that the accused could have used that language and yet have failed to know that he was speaking to Lieutenant Carnes. The accused did not deny that he had used the words complained of. Indeed, he could scarcely deny this—because of his claim that he did not remember the questioned transaction at all. Certainly the presence of a genuine alcoholic amnesia without more—according to current psychiatric teaching—would constitute no bar to a finding of knowledge. United States v. Olvera, 4 USCMA 134, 15 CMR 134. Thus, we are sure that the issue of want of knowledge was not reasonably raised by the evidence, taken as a whole. United States v. Higgins, supra. However, it was regarded as raised and appropriate instructions furnished. We believe them to have been sufficient. Idem.

Accordingly, the record of trial is remanded to The Judge Advocate General, United States Army, for proceedings not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.